## SAMUEL C. STEELE, et al. Respondents, v. SCOTT LORD, Appellant.

Where, in an action to recover a balance of account for advances made by plaintiffs by means of acceptances and payments through their bankers of drafts drawn upon them by defendant, it appeared that plaintiffs, upon receiving from the bank the cancelled drafts, in accordance with their usual custom and without fraudulent intent, and before any question or variance had arisen between them and defendants, voluntarily destroyed them, with other vouchers received at the same time. *Held*, that this did not deprive plaintiffs of the right of proving acceptance and payment of the drafts, without producing them.

The drafts were useful only as vouchers, and their destruction without ·audulent intent did not absolve the debtor from his obligation to repay, or preclude other proof of the advances.

*Blade* v. *Noland* (12 Wend., 173) distinguished.

(Argued April 13, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

The nature of the action and the facts sufficiently appear in the opinion.

*Francis Kernan*, for the appellant.    The referee erred in receiving secondary evidence to prove the drafts.    (*Blade* v. *Noland*, 12 Wend., 173; *Livingston* v. *Rogers*, 2 J. Cas., 488; 2 C. & H., notes, 1216–1233; note 860; 1 Phil. Ev., 452; *Jackson* v. *Bond*, 18 J. R., 59; *Jackson* v. *Fryer*, 16 id., 196.)

*Oscar Craig*, for the respondents.    The loss or destruction of the drafts having been proved and satisfactorily explained by plaintiffs, secondary evidence of their payment, acceptance and contents was admissible.    (*Chrysler* v. *Griswold*, 43 N. Y., 209; 2 C., H. & E., notes [5th Am. Ed., 1868], 434 [516].)

RAPALLO, J.    This action was brought to recover an alleged balance of account arising from advances made by the plaintiffs to the defendant for croquet sets agreed to be manufactured by the defendant for the plaintiffs under two contracts, one dated Sept. 4, 1869, and the other May 24, 1870.    The indebtedness is denied by the answer, but the referee found due to the plaintiffs the sum of $3,545.28, including interest to the date of the report.

The advances were made principally by means of drafts drawn by the defendant upon the plaintiffs, and accepted by them and paid through their bankers.    These drafts were very numerous, being as found by the referee, 112 in number.

The only point made by the defendant on the trial, as to the amount of the advances, was that thirteen of these drafts, amounting in the aggregate to $1,895.58, were not produced.

The plaintiffs were allowed to give evidence of the payment of these drafts without producing them, upon proof that they had been destroyed. The defendant took the point that the plaintiffs had voluntarily and intentionally destroyed these vouchers, and therefore should not be permitted to give secondary evidence of their contents. The proof on the subject of their destruction consisted of the testimony of the plaintiff Steele, who stated in substance that he had destroyed them, as he did all other vouchers received from the bank; that his rule was to destroy the vouchers returned by the bank as soon as he found the bank account satisfactory; that he always destroyed the vouchers, whatever their character, on settlement with the bank; that he had no particular object. in destroying them, only it had been his custom to destroy such papers upon settlement with the bank; that he destroyed them because he considered the account as balanced and the papers as useless; that he had no other motive in destroying them, and had no thought of the defendant, but destroyed others as well as his. There had at that time been no question or variance between plaintiffs and defendant, and he did not suppose there would be any, and when he destroyed them he only had in mind the account with the bank. He further testified that, at the time of this destruction, plaintiffs had regular entries on their books of the drafts and payments; that his only knowledge that the drafts were destroyed was that they could not be found, and that it was his custom to destroy such papers; that he had not destroyed any since his attention was called to the fact that it was important to preserve them; that he never singled out drafts of the defendant and destroyed them and kept others, but other drafts, checks and notes were destroyed at the same time that they were destroyed, without intent to defraud, and he had no intention in destroying them, except to get rid of waste paper. He described the manner in which the drafts and payments were entered on the plaintiffs' books, and stated that he at the time believed that such entries and the bank books were sufficient evidence, and he had never

before had any difficulty from the destruction of vouchers.

The truth and good faith of this explanation were questions of fact for the referee, which it is not the purpose of this court to review. The appellant relies upon the case of *Blade* v. *Noland* (12 Wend., 173), in which it was decided that a plaintiff could not recover upon a note sued upon as a lost note, or resort to proof of the original consideration, upon proof that he had voluntarily and deliberately burnt the note, without accounting for its destruction in such manner as to repel the inference of a fraudulent design in its destruction. In this case, as stated in the opinion of NELSON, J., the proof was that the plaintiff deliberately and voluntarily destroyed the note before it fell due, and there was nothing in the case accounting for or affording any explanation of the act, consistent with an honest or justifiable purpose, and the learned judge concludes by saying that he knows of no honest purpose for which a party, without any mistake or misapprehension, would deliberately destroy the evidence of an existing debt, and will not presume one. The report of the case shows that no explanation, whatever, of the destruction was given, and that there were circumstances of suspicion attending it. We do not think that the present case falls within the case of *Blade* v. *Noland.* The drafts in question in this action were not the contracts upon which, in case of dispute, the action should be brought; they had all been paid, and the action was for a balance of account, and these paid drafts were useful only as vouchers to prove the items of the account in case it should be disputed. The evidence shows, that at the time of the destruction of these paid drafts, no such dispute had arisen or was anticipated.

The account might have been proved without the the production of the drafts, even if they were in existence. For instance, if an account had been rendered by the plaintiffs to the defendant, showing the items of advances, and acknowledged by him to be correct. They were no more important to the establishment of the account than would have been

checks drawn to the order of the defendant, indorsed by him and paid by the bank, had the advances been made in that form. Yet it is quite usual, on balancing an account with a bank, to destroy the vouchers returned by the bank. If among vouchers thus destroyed there should be an indorsed check of some party with whom a dispute should subsequently arise as to a payment evidenced by such paid check, it would be a very harsh rule to hold that the payment could not be proved by any other evidence. The drafts in question stand upon the same footing. If the plaintiffs had supposed that the defendant would deny the payments, it would of course have been prudent to preserve the most authentic proof of them. But the omission to preserve this evidence, when explained as in the present case, should not absolve the debtor from his obligation to repay.

We think, therefore, that there was no error in the admission of evidence of the acceptance and payment of these destroyed drafts.

The point is taken on this appeal, that certain entries in the books of the plaintiffs and in those of their bankers, of the payment of these destroyed drafts, were erroneously admitted in evidence. I do not find any exception in the case which raises the point of the admissibility of these entries, or of the sufficiency of the proof of their correctness. The exception states that they were received under the same objection as the testimony of John H. Stewart and exceptions duly taken by defendant. By reference to that objection it appears that no entries in books were offered to be proved by John H. Stewart, but that the offer was to prove the fact of the acceptance and payment of the drafts claimed to be lost or destroyed. That evidence was objected to, and the objection was overruled. When evidence was subsequently offered of entries of the payment of these drafts, verified by proof of their correctness, no objection was specifically made to that mode of proof, but the defendant simply renewed the objection which had been made to the testimony of Stewart. He must have been understood by the referee as objecting

not to the mode of proof, but simply to the competency of proving the fact of the payment of the drafts not produced, and that objection, as we hold, was not tenable.

The defendant set up as a defense, that he was induced to enter into the contract out of which the indebtedness arose, by certain false representations of the plaintiffs. The evidence was conflicting as to what the representations were. The referee found that during the negotiation between the parties leading to the making of the first contract, the plaintiffs represented to the defendant that croquet could be made at the prices mentioned in that contract, and that they could get croquet of equal quality at such prices. That the portion of said representation relating to the price at which croquet could be manufactured was a matter of opinion, and was so understood by the defendant. That the part of said representation relating to the price at which the plaintiffs could get croquet, related to and was a matter of fact, and as such was relied upon and materially influenced the said defendant to enter into said contract, but that it did not appear that such representation was false.

Upon these findings it is very clear that no defense on the ground of false representations was established. The appellant, however, contends that the referee erred in the admission and exclusion of testimony bearing upon the falsity of the second representation. We have examined all the exceptions to rulings on evidence on this branch of the case, referred to in the appellant's points, and find no error which would justify the reversal of the judgment. The question to the witness, Dwight, whether the companies he visited could make croquet at the prices named in the contract, called merely for the opinion or conclusion of the witness, who knew nothing of the actual business of those companies, and was not connected with them, and bore very remotely, if at all upon the question at what prices the plaintiffs could get croquet, and was properly excluded. If the cost to those companies had been a fact material to this case, it should have been proved by some one having knowledge of it, and

not sought to be arrived at by the opinion or estimate of an outside person. The evidence of Avery that he did find in traveling to procure orders, that other manufacturers were selling croquet of a better quality and at a less price than plaintiffs could under the contract, did bear upon the question of the truth of the representation. Although it related to a time subsequent to the making of the first contract, yet it was about the time of the commencement of manufacture under it, and was not, I think, too remote.

On the settlement of the case, numerous requests were presented to the referee, to find or pass upon questions of fact, several of which requests he refused. In these refusals we find no error. The refusals to find, relate either to facts immaterial to the issues, or to matters upon which the evidence was not conclusive; and the refusals to pass upon questions of fact, relate to facts not material to the issues, or to mere items of evidence bearing upon those issues and not in themselves decisive. Such is the nature of the requests deemed most important, which relate to the three sets of croquet sent by plaintiffs to defendant from New York in April, 1870, to show that they could procure croquet cheaper than the contract prices.

The evidence on this subject was received by the referee, but several of the facts claimed by the plaintiff to be established by this evidence he refused to find, and others he refused to pass upon. There was no error in these refusals, because if the referee had found all the facts as claimed by the defendant, such findings would not necessarily have been inconsistent with his other findings, and would not have established conclusively that the representation relied upon was false. They could, at most, be evidence bearing upon the question.

The evidence was admitted, and was before the General Term, and as that tribunal had the power to reverse the judgment on questions of fact, it could, for that purpose, consider all the circumstances proved, without any findings in respect to them. It is only when a fact, or series of facts,

if found in favor of a party, would be controlling, that it is legal error to refuse to find or pass upon it or them.

We have examined the numerous exceptions in the case, and find no others which we deem it necessary to specially remark upon.

The judgment should be affirmed.

All concur, except ALLEN, J., absent.

Judgment affirmed.