EMMA J. MASON, Appellant, *v.* LYDIA C. LIBBEY, Respondent.

*Husband and wife — recognition by the husband of his wife's equitable claim to profits in a business conducted by them jointly — deed direct from a husband to wife, when sustained — parol trust, evidence required to sustain it — Resulting trust in favor of husband — does not arise when the money is in equity the wife's and the deed is taken to her.*

A business, for which the capital was orignally furnished to the husband by his wife, in 1833, was carried on by them, though it was attended to almost exclusively by the wife, and the gains in it were largely owing to her diligent efforts. With the profits of the business land in New Jersey was purchased in 1851, and the title thereto taken in the husband's name. In 1853 the husband executed a deed of the land directly to his wife. Under this deed, by the laws of New Jersey, the wife could hold but could not convey the land. Thereafter the husband and wife sold, joined in a deed of such land, the proceeds of such sale being paid over to and retained by the wife, the defendant in this action.

This action was brought by the daughter of the aforesaid parties against the wife (her mother), to enforce an alleged parol agreement between the husband and wife, by which it was claimed that the wife, in consideration of her husband's joining in the deed, agreed to hold the proceeds of sale in trust for the daughter.

*Held,* that the husband might acknowledge the equitable claim of his wife in the profits of the business and transfer to her property acquired through the use of such profits.

That the conveyance from the husband to the wife, though void at law, was not necessarily so in equity.

That the alleged trust might be established by parol proof, but that evidence to establish it would be received with great caution.

To establish a resulting trust by parol evidence it must appear that the purchase was made with the proper funds of the alleged *cestui que trust* and the title not taken in his name.

Where the money paid was the earnings of the wife of the alleged *cestui que trust,* and equitably hers, and the deed was taken to her, *held,* that no trust arose in favor of the husband.

Appeal from a judgment, entered at Special Term in the first department, dismissing the plaintiff's complaint.

The action was brought for the purpose of establishing the alleged rights and interest of the plaintiff in certain real estate on Tenth and Eleventh streets, in the city of New York, and to require the defendant to convey to the plaintiff certain property on East Broadway, New York city, and on Powers street, in Brooklyn, and for an accounting by the defendant. The plaintiff

is the married daughter of the defendant. The defendant married the plaintiff's father in the year 1831; the plaintiff was the only issue of the marriage; her father, the defendant's husband, died in 1873.

It was claimed by the plaintiff that the defendant received the proceeds of sale of certain land in New Jersey, upon the condition, and under an agreement with her husband, the plaintiff's father, that she would invest the proceeds, and hold the same in trust for the plaintiff.

The following opinion was delivered at Special Term:

VAN VORST, J.:

The plaintiff, who is the daughter of the defendant, has offered no evidence to sustain the claims in her complaint, with reference to the Tenth and Eleventh street houses, the title to which is in the defendant. And on the trial and argument plaintiff's counsel limited her demand for relief to the Williamsburg and East Broadway property. It is conceded by the defendant that this latter property was acquired through the proceeds arising from the sale of the farm at Scotch Plains, New Jersey, the title to which stood in the name of the defendant, when sold, as it had for a period of over twelve years. These proceeds, the plaintiff claims, were funds received and held by her mother in a fiduciary capacity in trust to invest for her. That the defendant had promised her husband, the plaintiff's father, as a condition to his signing the deed upon the conveyance of the New Jersey farm, that she would invest these proceeds for his and her daughter. If the claim of the plaintiff be well founded, that the proceeds of the New Jersey farm were received by her mother in trust, to invest for the plaintiff, this court would follow the fund, and charge with a trust in the plaintiff's favor the property purchased therewith, although the title was taken in the mother's name. In this view it is first to be determined whether the fiduciary relation claimed did in fact exist, and whether these proceeds received by the mother belonged in law or equity to the daughter, or were held in pursuance of a trust in her favor. The New Jersey farm was purchased in the year 1851, and the title was taken in the name of the plaintiff's father, the defendant's husband. But, the

defendant on the trial testified that, although the deed went to her husband, the consideration was paid by herself.

It appears that the husband and wife, shortly after their marriage, and in the year 1833, commenced a small business in a store in Grand street, in New York city. The wife had property to the value of a few hundred dollars belonging to her before her marriage. The proceeds of this property, she testifies, and there is no evidence to the contrary, was received by her husband and went into the business after marriage. The store was conducted almost exclusively by the wife. She gave it her personal care and attention for a period of nearly eighteen years, during which time the plaintiff was born, who is an only child. The husband generally bought the goods, but the wife attended at the store and sold them, and managed the details of the business. For a considerable portion of the time the husband had other affairs which engaged much of his individual attention. It must be believed, under the evidence, that the accumulations of money arising from the business were greatly owing to the diligent efforts and attention of the wife. A portion of these moneys were deposited by her, from time to time, through a series of years, in savings banks in the city of New York, in her own name, and were drawn out by her as her exigencies required. Property, real estate, was purchased and finally deeded to her in her own name, without real or apparent opposition from her husband. It may be reasonably concluded that he acquiesced in the justice and equity of a claim on her part to the moneys so deposited and invested in real property. The case would indicate that, and there is nothing which shows the contrary. It is doubtless true that the earnings of the wife at this time, the fruits of her labors, belonged to her husband. But, in the absence of claims or objections, on the part of the creditors, he could surrender a portion of these earnings to his wife. He might acknowledge her equitable claims to them, and could consent to the acquisition of property through them in her own name and to her own use. (*Kelly* v. *Campbell*, 2 Abb. Ct. Ap. Decisions, 494.)

A husband may permit his wife to labor for her own account. He may give her the proceeds she has earned, or allow her to appropriate them to her own use. (*Peterson and Wife* v. *Mul-*

*ford*, N. J. Court of Errors and Appeals, 7 Vroom, 486 ; *Skilman* v. *Skilman*, 2 Beas., 406; *Donovan* v. *Sheridan*, 37 Superior Court R., 256, 262.) It is claimed by the defendant, and she has so testified, that these moneys, acquired by her own efforts, her savings and earnings, together *with rents of her own property,* paid for the New Jersey farm. There is no contradiction of her evidence that she paid for the New Jersey farm, unless it be found in the language of the deed by which it was conveyed to her husband, which in the usual form acknowledged payment of the consideration. But it is not improper to *explain by oral testimony* the deed in this respect, and show that the consideration was, in fact, paid with the wife's money. In 1853 the husband deeded the farm directly to his wife. This conveyance, though void at law, was not necessarily so in equity. (*Hunt* v. *Johnson*, 44 N. Y., 27; *Peck* v. *Brown*, 2 Robt., 119; *Townshend* v. *Townshend*, 1 Abb. [N. C.], 81; *Simmons* v. *McElwain*, 26 Barb., 419; *Shepard* v. *Shepard,* 7 Johns. Chy., 57; Story's Equity Jurisprudence, vol. 2, § 1374.) Courts of equity will uphold grants from husband to wife, when they would be void at law. The above cases uphold that doctrine. Equity would not, however, uphold grants of all his estate to his wife by which he would be denuded. (*Beard* v. *Beard*, 3 Atk. R., 72.) The circumstances of the husband would be considered where creditors are concerned. (*Coates* v. *Gerlach*, 8 Wright [44 Penn. S. R.], 45.) The husband did not denude himself by this conveyance to his wife. He had other property and means — real estate and stocks. The conveyance by the husband to his wife may well be regarded, in the absence of all evidence to the contrary, and in view of the foregoing facts, as a recognition on the part of the husband of the equitable claims of his wife to the land, or as a transaction in the nature of an advancement. (2 Story's Equity Juris., § 1204; *Welton* v. *Divine*, 20 Barb. R., 9, and cases cited.) It is an indication of a clear intention on the husband's part to invest her with the title to this property. There were no impending claims of creditors. The act was voluntary ; there is nothing to show the opposite, but that he intended in good faith to invest her with the title. Nor is there any good reason why a court of equity should not give effect to the husband's act and intention at the time. In May, 1866, the hus-

band, who was then, and had been for several years living in the State of Virginia, in a state of voluntary separation from his wife, joined with her in a conveyance of the farm to John Taylor Johnston. The consideration realized on this sale, $10,000 and upwards, was wholly received by the wife, who conducted all the negotiations for, and consummated the sale, her husband being in Virginia, where he executed the deed. The proceeds received by the wife she invested in her own name in the property, the subject of this action, precisely as the farm stood before it was sold to Johnston.

The trust claimed by the daughter grows out of the signing of the deed by her father. She has testified that her father, when applied to by his wife for the purpose, objected to signing the deed, unless upon the condition that the defendant would invest the proceeds for her daughter. There is reason for the conclusion that the husband did at first decline to sign the deed. The daughter, who appeared to be in communication with him, so reported to her mother. On the 7th day of December, 1865, the defendant wrote to her husband, in Virginia, a letter, in which she says : " I have received a proposal concerning the sale of my farm, said to have come from you, the sum of which is that you will join in the sale, if I will give to Emma the sum of $1,700, and, also, that I will arrange matters so that Emma can have the full amount at my death ; also, that I will put the proceeds in the hands of a trustee. I will be willing to bind myself to leave the whole amount to Emma at my death ; as for the other proposals I could not accede to them. The farm is now sold for more money than it may sell for again, and if you don't join in the sale, it may be the means of breaking it up. If you have Emma's good at heart, you will not refuse to join in the sale.   *   *   * I wish you would write me by return of mail, and tell me decidedly if you will sign your name to the deed for the farm, and prevent my having to resort to other measures to obtain a deed, which will cost money that might be for Emma's use." One cannot fail to observe the firm ground upon which the defendant places herself, in the light of the reported refusal of her husband to sign the deed. She asks for his signature, evidently, as a right, and which, if withheld, could be enforced. There is no

hesitation or weakness which a conscious infirmity of title in equity, as between herself and husband, would suggest. She speaks of the property as "*my farm;*" she unqualifiedly refuses the reported proposal, that she should give a proportion of the proceeds to her daughter, in cash, or that the balance should be placed in the hands of trustees. She imposes her own conditions. This letter is only consistent with an earnest conviction, on the part of the defendant, that she owned the farm and had a right to dispose of it. No letter is produced showing the husband's reply to his wife's demand for his signature. The daughter, however, testifies that he still refused. She also testifies that her mother afterwards wrote a letter to her father, making some promise to invest the proceeds for her. No such letter is produced. Its general contents were, however, allowed to be proved orally by the daughter, who said she had read it, but that it was lost or destroyed.

But I do not regard the contents of this letter, so proven, as establishing the trust claimed. The mother testifies that she wrote no letter to her husband other than the one of December 7; but another was produced by the daughter, written to her father by her mother, dated February 18, of the following year. It is, however, entirely silent on the subject of any trust. Subsequently the mother went to Virginia for the purpose of obtaining the signature of her husband to the deed, taking her daughter with her. The plaintiff, who testifies she was present when the deed was signed, says: "My father objected to signing the deed; my mother said she was willing to do what he required of her, namely, to invest the money for me; what more do you want?" "My father turned to me and told me he hoped I would never regret what I had done; I was urging him to sign it; said I, father, I will abide by the consequences; he signed the deed, and threw the pen angrily from him, saying, I hope you are satisfied, and will never reproach me with the result, whatever it may be." The defendant denies the occurrence testified to by the plaintiff, and testifies that the deed was signed without any condition imposed by the father of plaintiff, or any promise whatever on her part with regard to the proceeds. Some time after the consummation of the sale of the farm, and the investment, by the defend-

ant, of the proceeds in the Williamsburg and East Broadway property, the husband returned to New York from Virginia, and lived in the Williamsburg house occupied by his wife. They did not, however, live together as husband and wife. He remained there some three or four years, and then went to his daughter's house, where he died in the year 1873. The title to the Williamsburg and East Broadway property was taken in the years 1867 and 1868.

No steps were taken by the husband in his lifetime to interfere with his wife's enjoyment of the property, or with her right and title to the absolute ownership thereof, nor by the daughter, until the commencement of this action, in the year 1874. This failure to take appropriate action to impress this property with a trust, during this period of five years and upwards, the defendant in the meantime being in the enjoyment and actual use of one of the houses, and exclusively of the rents and profits of the other, under a claim of title adverse to all others, is unfavorable to the plaintiff's case. In cases of alleged breaches of trust, of the character claimed in this action, parties claiming to be injured should move without delay. Nor was any action brought in the lifetime of the father, whose evidence for the plaintiff, in the light of her claim, would have been of advantage to her. The failure promptly to act is against the justice of the plaintiff's case. But apart from that, I conclude that the fiduciary relation claimed by the plaintiff, under the evidence, never, in fact, existed. That the defendant did not receive the proceeds of the New Jersey farm in trust to invest the same for the plaintiff; but, on the other hand, that these moneys equitably belonged to her. It is true that, according to the laws of New Jersey, the wife could not give a good conveyance of the farm. She might hold, but could not convey. (*Naylor* v. *Field*, 5 Dutcher, 287.) But this does not establish that the husband, as between himself and his wife, had any just claims to the proceeds of this farm, which had so long remained in her name, and in possession of which he left her when he departed for Virginia. Signing the deed would not give him these proceeds or the right to control them, if he was not otherwise entitled.

He might refuse to sign. But, by simply signing, he could

not determine the direction which should be given to the proceeds, or impress a trust upon them. That could only be done by the person entitled to the proceeds, and such the defendant must be adjudged to have been. No writing is produced, signed by the defendant, in which she obliges herself or undertakes to invest the proceeds of the New Jersey farm for the plaintiff. No writing signed by the father, even, indicating any such direction to the moneys, is produced. If he hesitated to sign the deed, and angrily threw the pen aside and intimated that his daughter would regret the act, why was not a writing demanded from the defendant before the deed was signed. It is evident that no engagement, satisfactory to the father, had been yielded by the defendant, if this occurrence is truly described by the plaintiff. If it was, however, that her word was distrusted, then an agreement or promise in writing would suggest itself. It does not appear that any was asked — none was certainly yielded. It requires evidence of a satisfactory character to engraft a trust upon property held by an absolute title, as to which there is no writing, parol evidence is to be received with caution. (*Boyd* v. *McLean and Wife*, 1 Johns. Chy., 583.) Parties are not to be divested of estates standing in their name, except upon the most satisfactory evidence. The burden of proving that these moneys belonged to her father, and through him to herself, rested upon the plaintiff in order to create a resulting trust. This she has failed satisfactorily to do. The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper funds of the *cestui que trust*, and the deed is not taken in his name. (*Bottsford* v. *Burr*, 2 Johns. Chy., 405, 414, 415); or as was said in *Getman* v. *Getman* (1 Barb. Chy., 499–514) by the Chancellor: "But to constitute a resulting trust, to be established by *parol evidence*, it is necessary that the consideration money for the purchase should belong to the *cestui que trust*, or should be advanced by some other person as a loan or gift to him." (*Lathrop* v. *Hoyt*, 7 Barb., 59; *Nixon's Appeal*, 63 Penn. St. Rep., 281; *White* v. *Carpenter*, 2 Paige, 238; *Steere* v. *Steere*, 5 Johns. Chy., 1.) This conclusion disposes of the plaintiff's case. The only satisfactory evidence looking at all to a prospective provision in favor

of the daughter, recognized by the mother, is contained in her letter of December 7th, an extract from which is given above, in which defendant says : "I will bind myself to leave the whole amount of my money to Emma at my death." The plaintiff, for the fruition of her expectations, with regard to the proceeds of the New Jersey farm, must await the event of her mother's death, which, by occasion of her toils, trials and advanced years, will probably occur on a day not distant. The plaintiff's complaint must be dismissed, but, for obvious reasons, without costs.

*Jacob F. Miller*, for the appellant.

*C. B. Ripley* and *S. P. Nash*, for the respondent.

Present — Davis, P. J., Brady and Ingalls, JJ.

Judgment and order affirmed on opinion of the court below.