# COURT OF APPEALS.

## EMMA J. MASON agt. LYDIA C. LIBBEY.

*Resulting trust — True doctrine at law, in equity and in favor of creditors — Offer to prove contents of letter lost or destroyed — Rule as to admissibility — Question as to loss or motive for destruction, one of fact.*

Where plaintiff sued her mother to recover property real, leasehold, and also the proceeds of such real property sold by defendant, alleging that it was formerly the property of her father, because purchased with her mother's earnings, to which her father had the legal right by virtue of his sustaining the relation of husband to defendant:

*Held, first.* "The doctrine that by marriage the defendant's property vested in her husband, and that after marriage her earnings belonged to him," though applicable "at law and in favor of creditors," yet "in equity it has been otherwise."

*Second.* "And it is impossible to see how a mere volunteer can derive from it any support in a prosecution which, if successful, would defeat a legal estate acquired with the husband's consent."

Mason agt. Libbey.

Where, in a trial involving the issue as to whether or not the defendant sustains the relation of trustee to plaintiff, and in respect of property described in the complaint, a witness on the stand testifies that he received a letter from defendant in reference to the property, "but the court have no means of knowing either the contents of the letter or the answer which was expected from the witness; but assuming that the answer would have been pertinent to the issue, it was for the court to determine, in the first instance, whether the evidence established that' the letter was destroyed, and also that its destruction was not to produce a wrong or injury to the opposite party, or to create an excuse for its non-production."

*December*, 1882.

Appeal by plaintiff from a judgment of the general term, first department, dismissing her complaint upon the merits. The facts as they appear from the pleadings and testimony are as follows :

The plaintiff is a married daughter of the defendant. Her maiden name was Emma J. Heath; she was born in 1845 ; her father being Lurad C. Heath, who died in May, 1873. After his death, and on the 6th December, 1873, her mother, the defendant, married John Libbey.

The defendant was married to her first husband, Heath, in 1831, in the state of Maine. She had then some property of her own, and after her removal to New York, she carried on a light dry goods business, in Grand street, for about eighteen years. The plaintiff was the only child of the marriage, and was born thirteen years after the marriage of her parents. During this period, her mother managed the business with care, and saved up her money, but the father seems not to have been successful in his enterprises.

On the 25th May, 1844, a house and lot in East Tenth street, New York, was conveyed to Mr. Heath, and, on the 16th of May, 1850, the same property was transferred by him to the defendant, a deed being first made to one Norman G. Hard, who conveyed to defendant.

The complaint charged that this property was so conveyed in trust for the plaintiff.

Mason agt. Libbey.

On the 30th of November, 1844, a house and lot in Eleventh street was conveyed to Mr. Heath, who, on the 24th of August, 1853, conveyed it directly to the defendant.

The complaint charged that this conveyance was also made in trust for the plaintiff, and that unless so declared, it is void.

In August, 1851, a farm in New Jersey, of about forty-seven acres, was conveyed to Mr. Heath, who, on the 9th day of December, 1853, conveyed it to the defendant, but the deed was not recorded till 1855. In 1866, defendant contracted to sell this farm; the fact that the conveyance by Mr. Heath was directly to his wife was made an objection to the title, and he, in May, 1866, joined in his wife's deed, to cure that defect. His doing so is claimed in the complaint to have been, upon the trust, that the proceeds should be invested for the plaintiff's benefit, and she claims to follow such proceeds into a house in East Broadway, and some property in Brooklyn, subsequently purchased by defendant.

Upon the trial, the plaintiff abandoned her claim upon the Tenth and Eleventh street houses, and limited it to the proceeds of the New Jersey farm.

Mr. and Mrs. Heath went to live on this farm about 1852. She had given up the Grand street store, which was retained by Mr. Heath for a while, till he sold it out to a Miss Moody. Some time after 1855, the domestic happiness of Mr. and Mrs. Heath appears to have been disturbed. She was placed in an asylum for about two years. She had previously collected the rents of her property, but Mr. Heath then got an order for their collection drawn up by the person to whom he sold out his store, and who helped him take his wife to the asylum. When she was released, she resumed the management of her affairs. Mr. Heath was annoyed by creditors, and went south, leaving her to manage the farm alone.

The plaintiff had been at boarding school four years, from about 1859 to 1863. In 1866, Mr. Heath appears to have been living near Washington, part of the time at City Point.

The general state of things is shown by a letter from defendant, put in evidence by the plaintiff, the only piece of written evidence directly bearing on the point in controversy, and it is upon an alleged trust in her favor, which, she says, her father imposed as a condition to joining in the deed spoken of in this letter, which perfected the title to the New Jersey farm, that the plaintiff based her action. This rests entirely upon her own evidence, which was contradicted by her mother.

Plaintiff undertook to give supplementary evidence of this alleged trust by conversations with her mother, testified to by herself and by her husband, Sumner A. Mason, and some slight evidence by his cousin, Mrs. Boyd. The witness, Sumner A. Mason, was a medical student, living with plaintiff's father at City Point in the fall and winter of 1866–7, after deed of the New Jersey farm. Plaintiff made his acquaintance there, on a visit to her father, and an intimacy grew up between them, followed by an engagement, then by a clandestine marriage before a justice of the peace at Portchester in the summer of 1869. A public ceremony took place in Plymouth Church, Brooklyn, in November following. During the engagement, defendant had advanced money to Dr. Mason, to aid in his medical education, and he testifies to a good deal of general conversation as to what she would do for Emma upon their marriage. At one time, it was proposed to settle in Philadelphia, and property was examined there, but defendant testified that in none of these conversations was there anything more than a consultation of the wishes of her daughter, on the assumption that wherever defendant might conclude to establish her home, her daughter, with her husband, would live with her.

After December, 1867, defendant settled in Powers street, Brooklyn, in a house purchased by her in that month, and about that time her absent husband returned and lived in the same house, supported by her, for three or four years, until about August, 1871, when he went to live with the plaintiff

and her husband in New York, the plaintiff having left her mother's house to join her husband in the spring following her marriage, the spring of 1870.

After the plaintiff's marriage and settlement in New York, defendant contributed largely to her support, allowing her regularly $1,800 a year, in monthly payments, besides other assistance.

It was not until after the death of Mr. Heath, and the ceasing of pecuniary allowances from her mother, that plaintiff commenced this action in May, 1874.

The case, in its general features, is an attempt by plaintiff, aided by her husband, to compel her mother to hand over, in her lifetime, the accumulations of her industry and frugality.

No legal right to the remedy claimed is pretended.

The alleged equitable right upon which the complaint was framed, that the property standing in defendant's name was not hers, but was placed in her name upon some trust, is abandoned.

All that was then left of plaintiff's case was the obligation supposed to flow from the promise which it is alleged was enacted from her, as a condition upon which plaintiff's father joined in a deed, which he was in equity bound to give.

This promise rests purely on oral evidence, which was conflicting, and the weighing of which involved questions of credibility as well as probability, and the decision was adverse to plaintiff's claim.

The general term affirmed the judgment of special term and plaintiff appealed to the court of appeals.

*Alexander Cameron* and *Samuel Hand*, for the appellants, made and argued the points following :

I. The money with which the New Jersey farm was bought belonged to Lurad C. Heath.

II. The title was taken by the husband. If the purchase money had come from defendant, the land would have been his.

III. The deed from Heath to his wife was void.

IV. The condition imposed by Heath in the deed to John Taylor Johnston was sufficient.

V. Plaintiff may show real nature of transaction by parol.

VI. The refusal of the judge to show the contents of the letter was error (9 *Wheat.*, 483, 487; 70 *N. Y.*, 280; 27 *Am. Decs.*, 126; 2 *Cow. and Hill's Notes*, 516, *ed. of* 1859).

VII. Denials of defendant are not equivalent to positive statements of plaintiff.

VIII. It is natural for the insane to hate their best friends (*Dr. Wm. A. Hammond, Diseases of the Brain*).

IX. The case should have been opened to let in additional testimony.

On behalf of defendant, *Chauncey B. Ripley* and *Stephen P. Nash* submitted the points following:

I. The entire foundation of plaintiff's equity, as laid in the complaint, was abandoned on the trial. That equity rested on the allegation that the Tenth and Eleventh street houses, which were the chief source of defendant's revenue, were held by her in trust for her husband, the plaintiff's father, and herself. The complaint charges, however, that defendant claimed that these properties were, as the deeds indicated, her own. Plaintiff gave no proof to sustain the allegations that the properties did not jointly belong to the defendant, and the evidence shows that they were the fruits of her own industry.

II. If the Tenth and Eleventh street houses belonged to the defendant, the evidence shows that the New Jersey farm was paid for by the money coming from these houses. The farm cost only $3,250, of which $1,600 was paid in cash by defendant, and mortgages assumed for the residue. These were subsequently discharged from the rents of the Tenth and Eleventh streets houses. There was no evidence to contradict this; no evidence to show that Mr. Heath ever paid a penny toward the cost of the New Jersey farm. He made the deed of it to his wife in 1853. He had her put in the

asylum in 1859. He left her in 1863, and in 1866 the farm was sold for $10,700. This increase in value belonged to the owner of the property, who must on the evidence be considered the defendant. There is no evidence that her husband, by any acts of his, added anything to such value.

III. Plaintiff's case then is, that defendant's husband, having the naked power to refuse to confirm the sale made by his wife of her own property, but without any equitable right so to refuse, exacted as a condition of having what she had a right to demand, that she should agree to invest the proceeds for the plaintiff's benefit. This alleged exaction by him, and promise by the defendant, rests upon the unsupported testimony of the plaintiff, contradicted by the defendant, and was properly found by the judge at special term, not proven.

IV. Such an agreement, if proved by oral evidence only, could not impress a trust upon real estate held by a title absolute in its terms, nor, if executory, be enforced (2 *R. S.*, 134, § 6; 137, § 2; *Cook* agt. *Barr*, 44 *N. Y.*, 156; *Sturtevant* agt. *Sturtevant*, 20 *N. Y.*, 39). The exception to this rule is where the holder of the title holds it in fraud of the true owner, either from having taken it wrongfully or upon a trust which he repudiates (*Ryan* v. *Dox*, 34 *N. Y.*, 307). This cannot be said to be the case here, if defendant was the true owner of the farm. She was such owner, if it was paid for with her own money, and that this was so is hardly disputed.

V. The conflicting testimony was all carefully considered at the trial term. There is no ground for reversing the conclusion there reached, and the judgment should be affirmed, with costs.

DANFORTH, *J.*— Upon the pleadings, the issue was one of fact, whether there had been a declaration of trust, or rather whether the premises described in the complaint were held in trust for the plaintiff. The defendant was her mother, and considerable testimony was given of casual and loose conversations for the purpose of establishing the plaintiff's demand; yet, if that testimony stood uncontradicted, it would scarcely

Mason agt. Libbey.

create a belief that the defendant at any time sustained the character of trustee in relation to the property or ever held herself out in that light, or as other than its actual owner. Indeed, at the conclusion of her testimony, the plaintiff's counsel abandoned all claim to an important portion of the property, and to another portion before the close of the trial, As to the rest, the defendant so overcame the plaintiff's case by contradictions and independent statements that the learned trial court was not led to the conclusion that the defendant was either in fact a trustee or that she had at any time declared herself to be a trustee of any of the real or personal property described in the complaint, and as to which judgment was demanded. On the contrary, he found that, as to the property on Tenth and Eleventh streets, the plaintiff had offered no evidence, and as to that and the rest of the property, the title was in the defendant, and moreover that for part of it the price was paid from her earnings and title taken in her name, with the approval of her husband; and from this it followed that neither at law nor in equity had the plaintiff any estate or interest in the premises in question. Against this conclusion the appellant struggles in vain, for her contention has no better foundation than the doctrine that by marriage the defendant's property vested in her husband, and that after marriage her earnings belonged to him. At law and in favor of creditors there are no doubt cases where this doctrine would avail, but in equity it has been otherwise, and it is impossible to see how a mere volunteer can derive from it any support in a prosecution which, if successful, would defeat a legal estate acquired with the husband's consent.

Upon every question involved in the merits of the case we entirely agree with the learned trial court, and in the views expressed in its opinion.* It is, however, said by counsel

---

*For opinion of VAN VORST, J., see *Mason* agt. *Libbey*, special trial term, reported 54 *How. Pr.*, 104–112.

The general term decision is reported in 19 *Hun*, 119–127. Judgment of special term affirmed on opinion of the learned judge below.

for the appellant, that the trial judge erred in excluding certain evidence offered by her husband in her behalf. He testified to an acquaintance with the defendant commencing in 1866; that he had conversations with her in 1866 and 1867, "in reference to property," and which, as detailed by him, were of the most general and unimportant character; that he had correspondence with her "continually." "I had," he says, "one letter in two weeks," and remembers receiving one in the fall of 1867. These letters he destroyed in 1868, as he was about leaving Philadelphia for New York. He says: "I tore them up and burnt them, because I didn't want to encumber my baggage with such a large pile of letters." Asked, "Did you have any idea that those letters were of any importance," says, "No, it never occurred to me that they were of any importance." "Did you give the matter of the destruction much consideration." Answers, "Not in the least." Did you have any other reasons for destroying them except what you have stated? Answers "No." Being again asked, "Did you receive a letter from Mrs. Heath" (the defendant), "with reference to the property?" Answers, "I did." Q. "And destroyed it under the circumstances mentioned." Answers, "I did." He was then requested to state the substance of the letter, and upon objection by the defendant's counsel, it was excluded.

We have no means of knowing either the contents of the letter, or the answer which was expected from the witness, but assuming that the answer would have been pertinent to the issue, it was for the court to determine in the first instance whether the evidence established that the letter was destroyed, and also that its destruction was not to produce a wrong or injury to the opposite party, or to create any excuse for its non-production (*Jackson* agt. *Frier*, 16 *Johns.*, 198; *Stephen's Digest of the Law of Evidence*, art. 72). This is so whether the paper was destroyed by a party (*Riggs* agt. *Taylor*, 9 *Wheaton*, 483; *Steele* agt. *Lord*, 70 *N. Y.*, 280; *Blade* agt. *Nolan*, 12 *Wend.*, 173), or a witness (*Livingston* agt.

*Rogers*, 2 *Johns. Cases*, 488), and the sufficiency of the explanation presented a question of fact for the trial judge which this court cannot review (*Steele* agt. *Lord*, 70 *N. Y.*, 280–283).

The judgment appealed from should be affirmed.

All concur, except TRACY, J., absent.