THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN COLLINS, Appellant.

(Argued April 27, 1936; decided May 26, 1936.)

*Mordecai Konowitz, Albert E. Short* and *John T. Clancy* for appellant.

*Charles P. Sullivan, District Attorney (John H. W. Krogmann* of counsel), for respondent.

HUBBS, J. Appellant has been convicted of murder, effected while engaged in the commission of a felony.

Appellant was indicted together with Fred Majdan, and it is alleged that the defendants, each aiding and assisting the other, committed the crime. The jury disagreed as to the defendant Majdan.

The crime was committed on June 22, 1935. At about one o'clock in the morning six persons were in Klem's Tavern in Winfield, Queens county. The owner Klem was standing behind the bar at the end farthest from the entrance. Sitting on a stool at the bar was a patron named Sullivan. At a table at the right of the bar as one entered, the deceased Charles Theuner sat with three other persons. The deceased faced the door of the tavern, McConville had his back to the door and was facing Klem, Gartmeyer faced the bar, and Krevohlavy had his back to the door.

Three men entered the tavern, drew guns and said, "Stick them up." McConville turned in his chair, saw a gun in the hand of one and made a lunge for it. He seized the hand of the gunman. The gun was discharged and a bullet passed through his buttocks. Two other shots were fired, although it does not appear which one of the gunmen fired these shots. McConville fell to the floor. Theuner was struck by a bullet and died as a result of it. The three men escaped. They were on the premises only a little over a minute.

On July 11th appellant and three other men were apprehended by the police while riding together in an automobile. The codefendant Majdan was one of the passengers. Another passenger was a man named Burns. When arrested, appellant gave a false name.

Of the five men present with deceased on the night of the shooting only two could identify the defendant-appellant. All were produced upon the trial. Sullivan did not see what happened. He did not hear the gunmen enter. Krevohlavy said that he was drunk and saw nothing. Gartmeyer identified Majdan as one of the assailants, but could not identify the appellant. McConville identified appellant as the man with whom he had the encounter. Klem, the proprietor, likewise made a positive identification of appellant. There was no confession by appellant and no other evidence to connect him with the crime. He offered no evidence but rested upon the People's case.

The two witnesses who, at the trial, pointed out appellant as the man who entered with the gun were positive in their identification, but in their description of the clothes he wore, etc., they were at variance. Appellant argues that in view of this, the identification was so doubtful, contradictory and improbable that justice requires a reversal and a new trial.

The witness Gartmeyer was taken to the morgue and he there identified a body as that of one of the assailants. It developed that this was the man Burns, who had been in the car with appellant when he was arrested. Appellant argues that this was reversible error. Burns was not mentioned in the indictment. In fact, only appellant and Majdan were named therein.

Closely related to this point, appellant urges that the error was aggravated by allowing a police officer to testify that Burns had committed suicide after he was apprehended. The trial judge ordered this evidence stricken out when it appeared that the officer had no personal knowledge of the fact. When objection was made to the evidence as to how Burns met his death the court said: " I will allow the People to show before this jury why, if such evidence is available, the third person who was said to have been at the scene of the homicide,

is not here now." It is conceded that the People could properly show that he was dead, but appellant objected to any proof as to how he met his death. It is argued that proof that Burns committed suicide probably called for the inference that he was guilty of this crime and committed suicide to escape trial. He was identified as one of the robbers, and, being then in the company of appellant, that fact, it is argued, strengthened the case against appellant.

There was no proof as to which of the three men fired the shot which killed Theuner. Only Majdan and appellant were named in the indictment. The indictment charges that each defendant, aiding and assisting the other, committed the crime. Appellant urges that since the indictment named only the two, the proof should show that the bullet was fired by one of them. This point has been decided adversely to this contention in *People* v. *Scarnici* (266 N. Y. 401).

Appellant contends that there was no proof of an independent felony; that the only evidence was that the three men entered and said, " Stick them up; " that these men may have come to kill one of those present and not to rob. We do not believe that there is any substance in that claim.

It is urged that it was error for the court to omit, in its charge, to define conspiracy and intent to commit a crime. The court charged every request made by the defendant's counsel and, at the request of counsel, explained the essential elements of the crime of attempted robbery, and therein repeatedly used the word " intent." There is no claim here that the murder was not committed exactly as testified to by the People's witnesses.

As no witnesses were called by appellant, the sole question was the question of identification. The witness McConville was seated at a table near the door when the gunmen came in. He heard the words, " Stick them up." He turned slightly in his chair and saw a man with a gun. The man was looking directly at the proprietor

of the restaurant, Klem, who was standing behind the bar. He made a lurch toward that gunman in an attempt to get his gun. The man with the gun was only six or eight feet away from him. He testified positively that that man was the appellant Collins. He said that he only saw one of the men, meaning that his attention was fastened upon that one man. He had previously identified him at the jail. On his cross-examination he volunteered the statement, " I will never forget his face." He testified that he was in full view; that he looked him in the eye, and that he looked at his face; that he was talking to him face to face. It is true that this witness described his wearing apparel and some minor details contradictory to the description given by other witnesses. The whole affair transpired in a very short space of time. Under the conditions it is not surprising that the various witnesses contradicted each other as to minor details. It is hard to see how there could be a more positive identification than that afforded by the evidence of this witness.

The proprietor Klem also identified the appellant. He was standing behind the bar when the gunmen came into the place. He testified: " He said ' stick them up.' I wanted not to make a move. He pointed towards me, so I didn't loose my eyes off him a minute * * * I was paying attention to him — he measured for me * * * I was watching his guns * * * I was looking in his face and guns * * * I see him now yet." The witness was positive that the appellant Collins was the man he referred to. Those two witnesses were the only witnesses who identified the appellant. Their testimony constituted a clear and positive identification. The fact that the witnesses differed as to minor details is of little weight or importance. Each of these men had his gaze centered upon the face of the appellant. One of them said he never would forget how he looked. The other said, " I can see him now." Certainly the

testimony presented a clear question of fact for the jury and justified it in finding beyond a reasonable doubt that the appellant was one of the gunmen.

The witness Britton was called by the defendant Majdan. He testified that he lived across the street from the restaurant; that he saw an automobile stop in front of the restaurant and three men get out and go in; that he heard three shots and then saw three men back out of the door; that at the time he was within ten feet of them, and he testified that neither of the defendants was there. He said that he had a good view of the three gunmen because of the light from the sign in front of the restaurant. The proprietor of the restaurant was called in rebuttal and testified that at the time of the hold-up there was no light in front of the restaurant; that the light there at the time of the trial was placed there after the murder. Detective Schlegel, who had a conversation with the witness Britton on the night of the murder, was called on rebuttal. He testified: " I asked Mr. Britton what he saw and what he heard and Mr. Britton said that he was going into his house about one A. M. when he heard three shots." He also testified that Britton told him on that occasion that he was going into his house about 125 or 150 feet away when he heard the shots. If the jury believed the evidence of the detective, then the statements of the witness Britton as to standing near the door of the restaurant and seeing the three gunmen retreat were directly in conflict with what he told the detective immediately after the happening of the hold-up. It also appeared that the witness Britton was near sighted and wore glasses in the court room and put them on when he looked at the defendants for the purpose of stating whether or not they were present on the occasion testified to. Under the circumstances the jury would have had the right to disregard the evidence of the witness Britton.

The question then is whether under this state of the record the evidence to the effect that Burns committed

suicide constituted such error as to require a reversal of the judgment. We do not believe it does. Undoubtedly the People had the right, and in fact it was the duty of the District Attorney, to account for the absence of the third gunman. It was perfectly proper to show that he was dead. When the appellant was arrested, he and the co-defendant and Burns were in an automobile together. The appellant gave a false name. The fact that the three were together in the automobile, operating it in violation of law under a license issued in the name of another person, would have suggested to the jury that he was one of the three gunmen. In addition to that, one of the witnesses testified that he went to the morgue and looked at the remains and was able to say that Burns was one of the three gunmen. Of course the argument that the evidence of suicide carried the implication that he was guilty of participating in the hold-up remains, but in our judgment it is not of sufficient weight to justify a reversal.

The judgment of conviction should be affirmed.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment of conviction affirmed.