The People of the State of New York, Respondent, *v.* Louis Elbroch, Defendant, Impleaded with Frederick Miller and Edward Knott, Appellants.

First Department, April 16, 1937.

*Morris Maltzer*, for the appellant Frederick Miller.

*Herman L. Falk* of counsel [*Theodore E. Glicenstein* with him on the brief; *Herman L. Falk*, attorney], for the appellant Edward Knott.

*George Tilzer* of counsel [*Sol. Boneparth* and *Herman J. Fliederblum* with him on the brief; *Samuel J. Foley, District Attorney*], for the respondent.

MARTIN, P. J.   On August 19, 1935, Battisto Salvo was kidnapped and held captive in the county of Bronx, city of New York, until August 22, 1935, on which date he was released on payment of a ransom in the sum of $9,000.  The kidnapping is alleged to have been carried out by eight conspirators, Louis Elbroch, Frederick Miller, Edward Knott, Frank Dolak, Benjamin Holinsky, Al Stern, Harold Brooks and Leo Aaronson.  Of these men, Elbroch, Miller and Knott were indicted, tried and convicted; four others, Dolak, Holinsky, Stern and Brooks, were dead at the time the indictment was filed, and the eighth man, Aaronson, testified on the trial as a witness for the People.

The principal witnesses on behalf of the People were Leo Aaronson, confessedly one of the kidnappers, and Irving Blauner who, although he had knowledge of the conspiracy and of the crime, was not made a defendant.

On July 18, 1935, Brooks and Stern rented an apartment in premises 1687 Carter avenue, Bronx. At a meeting held in that apartment on August 15, 1935, the eight conspirators were present, and they then determined to kidnap Salvo. Aaronson was given $150 to buy a truck for use in the kidnapping. He purchased a Chevrolet truck with a closed body on August 16, 1935. Holinsky knew Salvo, and on August 19, 1935, at the Carter avenue apartment, he agreed to point out Salvo to the conspirators. That evening Holinsky, Dolak and Aaronson left the apartment and drove in a Buick car bearing New Jersey license plates to One Hundred and Seventy-fourth street and Third avenue, where they picked up Blauner, who also knew Salvo. The four men then proceeded to White Plains avenue and Gun Hill road, where Salvo and his business partner, Milo, had an office on a used-car lot. Blauner stepped out of the car, looked into the shack which was used as an office, and then reported to the conspirators that neither Salvo nor Milo was in the office. The men then drove around the block, and while doing so Holinsky remarked that he saw Salvo get out of an automobile and enter the office. Being satisfied that Salvo was in his office, the group returned to the apartment on Carter avenue. Holinsky left the car before it reached the apartment. Dolak, Aaronson and Blauner met Stern at the apartment. Aaronson took a brief case containing four pistols and, with Dolak and Blauner, went to One Hundred and Seventy-fourth street and Third avenue, where they met Knott, Miller, Elbroch and Brooks. Blauner was driving the Buick car, with Aaronson and Dolak as passengers. Miller entered that car. Knott drove the closed Chevrolet truck in which Elbroch and Brooks rode. The car and the truck then proceeded to White Plains avenue and Gun Hill road. Before the Buick reached the used-car lot Blauner left the automobile and Aaronson took the wheel.

When the car and the truck arrived at the used-car lot where Salvo's office was located, Salvo was observed coming out of his office and going toward his car. Brooks and Elbroch, who had been in the Chevrolet truck, approached Salvo and " stuck him up;" Brooks hit him on the head and with Elbroch's assistance pushed Salvo into his own car. Miller and Dolak, who had stepped out of the Buick car and walked around the block, were then about fifty feet away. They joined Brooks and Elbroch in Salvo's car, which drove from the scene. Aaronson drove the Buick away, and Knott

drove the Chevrolet truck. Aaronson arrived at the Carter avenue apartment and met Stern. In a few minutes Miller, Elbroch, Dolak and Brooks, with Salvo, came into the apartment. Aaronson and Dolak drove Salvo's automobile to Echo place and Jerome avenue, Bronx, notified someone in Salvo's office that the car could be found there, and then returned to the Carter avenue apartment. Holinsky was in the apartment with Brooks when Aaronson and Dolak returned. The kidnapped man denied he was Battisto Salvo and claimed he was a brother of that man. Holinsky was sent for and identified the prisoner as Battisto Salvo. The kidnappers then demanded a ransom of $25,000. On August 22, 1935, the sum of $9,000 was paid, and Salvo was released.

At about three o'clock on August 22, 1935, the eight conspirators met at the home of Aaronson, at which time Stern produced the $9,000 ransom and each of the eight men was given $1,000. Out of the balance a new Chevrolet automobile was purchased, in payment for which the Buick car was traded in and $500 of the ransom money was used. From the sum he received Holinsky paid Blauner $250. On August 24, 1935, the Chevrolet closed truck which had been purchased for use in the kidnapping and was so used was driven by Knott to the repair shop of Louis Petchers on Webster avenue, Bronx. Knott told Petchers he would call for it within three days. He did not do so and the police officials removed the truck some months thereafter.

Anna Urban, an assistant to the superintendent of 1687 Carter avenue, testified that she saw six of the conspirators going in and out of the apartment used by the kidnappers. She also testified that she saw the kidnapped man Salvo leave the premises accompanied by some of the kidnappers. Madeline Bradman, the superintendent of the apartment house, said that the apartment was rented on July 18, 1935, and vacated on August 22, 1935. She identified all of the conspirators except Knott as having entered or left the apartment. Petchers testified that Knott brought the Chevrolet closed truck to his garage. Assunto Cancellieri testified that Miller had a large sum of money on the night of August 22, 1935.

The defendants did not take the stand. Knott called no witnesses. Miller called several witnesses to substantiate his alibi defense. One of his witnesses, related to him by marriage, testified that Miller was in his company on August 19, 1935, the day of the kidnapping, from six-thirty A. M. to six-forty-five P. M. and from eight P. M. to eleven-thirty P. M. Witnesses also testified that on August 21, 1935, Miller was in their company from six or six-thirty P. M. until about eleven-thirty P. M. These witnesses

claimed to be certain of the date because one of them returned that day from Metropolitan Hospital with a new-born baby. Another witness testified that on August twenty-second, the day the conspirators released Salvo and divided the ransom money, she saw Miller for an hour or more commencing at one-forty-five P. M.

The appellant Miller, on this appeal, contends (1) that the trial court erred in refusing to charge as a matter of law that Irving Blauner was an accomplice; (2) that the trial court committed error in refusing to charge that if the jury found that the witness Blauner was an accomplice, then it could not and may not consider Blauner's testimony as corroboration of the testimony of Aaronson; (3) that the trial court erred in refusing to charge that if the jury disbelieved the testimony of Aaronson and Blauner, they must acquit all the defendants; (4) that the trial court committed reversible error in denying the motion to direct an acquittal, as the evidence in corroboration of the accomplices was not sufficient to warrant the submission of the case to the jury; (5) that the trial court committed error in admitting in evidence the indictment and the conviction of Salvo and in permitting the district attorney to read to the jury the indictment which charged that Salvo had been kidnapped but refused to help the authorities in their efforts to apprehend and punish the kidnappers; (6) that the trial court committed reversible error in admitting evidence as to the death of the co-conspirators, Stern, Brooks, Holinsky and Dolak; (7) that the trial court committed reversible error in receiving testimony indicating that a search had been made for Milo, the partner of Salvo, but that he could not be found; (8) that the court's charge on corroborative evidence was misleading, confusing and erroneous and constituted prejudicial error, and (9) that the verdict of the jury was contrary to the weight of evidence and should have been set aside.

The appellant Knott, in addition to the foregoing contentions, asserts that reversible error was committed by the trial court in denying his motion at the close of the People's case, to dismiss the indictment as to him on the specific ground that there was no corroboration to connect him with the commission of the alleged kidnapping.

We would affirm this judgment of conviction if the appeal involved only the sufficiency of the corroborative evidence presented to substantiate the testimony of Aaronson and justify the submission of the case to the jury. The testimony of the witnesses other than Aaronson and Blauner was sufficient to connect the defendants with the various steps in the commission of the crime. The fact that there was not corroboration of every step is not

sufficient to justify a conclusion that the appellants were not implicated.

In *People* v. *Dixon* (231 N. Y. 111) the court said: " The corroborative evidence need not show the commission of the crime; it need not show that defendant was connected with the commission of the crime. * * * It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. The corroboration is not restricted to any particular point. * * * It may vary in its nature according to the circumstances of the particular case. Matters in themselves of seeming indifference or light trifles of the time and place of persons meeting may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime."

In *People* v. *Elliott* (106 N. Y. 288) we find the following: " Each circumstance taken by itself is quite inconclusive, but when considered together they certainly furnish some corroborative evidence."

The errors committed on the trial of these defendants require a reversal of the judgment of conviction and a new trial.

It was clearly error for the trial court to refuse to charge as matter of law that Blauner was an accomplice. He testified that he knew of the kidnapping plot in the first week of August, 1935; that he was with Aaronson when the Chevrolet truck was purchased on August 16, 1935, for use in the kidnapping; that he was present when the kidnapping was discussed on August 19, 1935. Knowing the intentions of the conspirators and their determination to carry out their plot, Blauner met Brooks, Dolak and Holinsky at One Hundred and Seventy-fourth street and Third avenue on August 19, 1935, at eight P. M. and drove them in the Buick car to Salvo's place of business, stepped out of the car and looked into the office window to ascertain if Salvo was present. He later drove the same men to the apartment on Carter avenue and from there to One Hundred and Seventy-fourth street and Third avenue, from which point the conspirators went to Salvo's office and kidnapped him. Blauner testified that he left the Buick car before it reached the used-car lot where Salvo was taken. There is no proof that he intended to abandon the crime. The record shows that he knew Salvo and did not want to be present when Salvo was seized. Holinsky, who also knew Salvo, was not present at that time. The two men in the group who knew Salvo absented themselves so that they could not be recognized by the victim. Blauner was given $250 of the ransom money by Holinsky.

The testimony of Blauner and Aaronson, both called as witnesses for the People, thus establishes that Blauner participated in the crime as a principal and could have been prosecuted as matter of law. It was error, therefore, for the trial court to refuse to charge that Blauner was an accomplice. It is only when different inferences may be drawn from the established facts that it may be left for the jury to say whether a witness is or is not an accomplice. (*People* v. *Clougher*, 246 N. Y. 106.)

The trial court committed reversible error in refusing to charge that if the jury found the witness Blauner was an accomplice it could not consider Blauner's testimony as corroborative of Aaronson's. (*People* v. *O'Farrell*, 175 N. Y. 323.) It is interesting to note that the People concede that the request to charge was proper and should have been granted. The People, however, contend that inasmuch as the request was submitted in writing and denied without being read aloud in the presence and hearing of the jury, no reversible error was committed. Certainly, this does not, in any way, correct the serious error committed in refusing to charge as requested.

It was error for the trial court to refuse to charge that if the jury disbelieve the testimony of Aaronson and Blauner they must acquit all of the defendants. In *People* v. *Stehr* (168 App. Div. 119; 172 id. 970; affd., 219 N. Y. 593) it was held that where there is no direct proof establishing a defendant's guilt except the testimony of an alleged accomplice, it is error to charge that if the jurors disbelieve the testimony of the alleged accomplice connecting the defendant with the crime, they may nevertheless find him guilty upon the evidence.

Battisto Salvo, the alleged victim of the kidnapping, was not called as a witness on behalf of the People. He was in court several times during the trial and was available as a witness for the defendants as well as the People. No inference could be drawn, therefore, that his testimony would be unfavorable to either side. (*Longacre* v. *Yonkers R. R. Co.*, 236 N. Y. 119; *Hayden* v. *New York Railways Co.*, 233 id. 34.) The People were permitted, however, to introduce in evidence and to read to the jury the indictment of Salvo in which he was charged with refusing to divulge to the lawfully constituted authorities information which he allegedly possessed with respect to his alleged kidnapping on August 19, 1935. The prosecution also introduced in evidence the jury's verdict of guilty on the trial of Salvo on that indictment. It was improper to bring to the attention of the jury in this case the indictment and conviction of Salvo. It is obvious that the only purpose of introducing that evidence was to show the jury that

another jury had found that Salvo had been kidnapped and thus induce the jury to believe that Aaronson and Blauner were telling the truth. Such evidence presented as an established fact the proposition that Salvo had been kidnapped. That was the issue for the jury to decide in this case. If the People found it necessary to explain the failure to call Salvo, it could have been shown by other proof that he was a witness hostile to the prosecution.

Brooks, Dolak, Stern and Holinsky were parties to the conspiracy and were accomplices in the kidnapping. The People, to explain their failure to call these men, proved that the dead body of Stern was seen in a morgue in Newark, N. J.; that the dead body of Brooks was seen at the Hospital for Joint Diseases; that the dead bodies of Dolak and Holinsky were seen at the Fordham morgue. It is urged on behalf of the appellants that the admission of such evidence constituted reversible error. Since the four men, if alive, would have been adverse witnesses, the People were under no obligation to call them as witnesses or to explain their absence. (*People* v. *Slover*, 232 N. Y. 264.) The admission of the testimony constituted error. If for any reason the People found it necessary to account for the absence of these accomplices, it would be proper to show they were dead (*People* v. *Collins*, 271 N. Y. 254) but not to go into details to show death by violence.

The People introduced testimony to show that unsuccessful efforts had been made to locate Milo, the partner of Salvo. The appellants contend that the testimony was brought to the attention of the jury to show that Milo was afraid to appear and testify against the defendants, and that such testimony was highly prejudicial to the defendants and its admission constituted error. If the People were obligated to account for Milo's absence they might do so, but not by evidence designed to inflame the jury.

The charge of the trial court with respect to the corroboration of the testimony of an accomplice was also erroneous. The jury were given the case for deliberation under a charge which would have enabled them to convict the defendants on the testimony of an accomplice not otherwise corroborated by evidence tending to connect the defendants with the commission of the crime, as required by section 399 of the Code of Criminal Procedure. This constituted reversible error. (*People* v. *Becker*, 215 N. Y. 126; *People* v. *O'Farrell*, 175 id. 323.)

While it may be true that the defendants, if guilty, are unworthy of consideration, they are, nevertheless, under our system of jurisprudence, entitled to have their guilt properly established upon a fair trial free from substantial errors.

Because of the many errors set forth above the verdict of the jury must be set aside, the judgment of conviction reversed and a new trial ordered.

O'MALLEY, DORE and COHN, JJ., concur.

Judgment unanimously reversed and a new trial ordered.