■ In the Matter of the Claim of CHERRY SEYMOUR, Respondent, v. RIVERA APPLIANCES CORP. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— COOKE, J. Appeal from a decision of the Workmen's Compensation Board, filed March 28, 1969, which affirmed an award of death benefits based on findings that claimant's husband had come to the aid of a coemployee, that his death arose out of hazards created by the employment and that he sustained an accidental injury resulting in death. Trevor Seymour, the decedent, worked as an assembler in the employer's electric appliance factory and, although not in a supervisory position, frequently helped others in their work. Also employed there were Charlie, Frankie, Irma and Wells. On October 4, 1966, during a regular afternoon break, Irma slapped Frankie, and Seymour engaged in a fight with Frankie and his friend, Charlie, until it was broken up by decedent's friend, Wells. Charlie and Frankie stalked out of the plant, and were told by the foreman that if they left they would be fired, but they kept on and were followed by decedent and Wells. When the four got outside, another tussle broke out between Seymour and Frankie. The next afternoon Charlie and Frankie returned to the place of employment and shot Seymour dead. There was testimony that Charlie stated he worked opposite Irma who kept looking at him, that he thought Irma was flirting with him, that he complained to his girl friend, another employee, and, after she talked to Irma about the flirtation, Irma spoke to Charlie and the argument started. There was also proof that the deceased employee said that two women were arguing over one of the fellows and that evidently Charlie pushed Irma and that, when decedent asked why he pushed the girl, they got into words and the fight erupted. Said hearsay and declarations of the deceased employee were sufficiently corroborated by facts and circumstances proven, particularly by two girls, both eyewitnesses. One testified that Charlie and Irma were arguing and that Irma smacked Frankie, and the other related that at the 3 o'clock break Irma called the guy and wanted to tell him about an argument that was going on between one of the girls that was going out with one of the guys, that she asked them some questions, that she argued with Frankie, that Irma slapped Frankie and that, after Seymour asked Frankie why he struck her, the fight started (see Workmen's Compensation Law, § 118; *Matter of Angelino* v. *660 Park Ave. Corp.*, 28 A D 2d 798; *Matter of Williams* v. *Buffalo Gen. Hosp.*, 28 A D 2d 777; *Matter of Jones* v. *Chicago Pneumatic Tool Co.*, 9 A D 2d 804). Claimant is not entitled to an award unless it can be said reasonably that the death arose out of and in the course of employment (*Matter of Pryor* v. *Presbyterian Home for Aged Women*, 9 N Y 2d 869), and whether this is so here is a question of law (see *Matter of Kaplan* v. *Zodiac Watch Co.*, 20 N Y 2d 537). To be answered in the affirmative, the death must have resulted from acts occurring while the employee was doing the work for which he was employed, it must have been a natural incident to the work and it must have been one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work (*Matter of Scholtzhauer* v. *C. & L. Lunch Co.*, 233 N. Y. 12, 14–15). An award cannot be made where the accident results from the chances of life in general to which decedent was exposed in common with all mankind rather than as an employee (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148, 152). Regarding injuries incurred during a coffee break or rest period,

awards are sustained on the basis that the employer retains constructive control of the employee (*Matter of Caporale* v. *State Dept. of Taxation & Finance,* 2 A D 2d 91, affd. 2 N Y 2d 946) but denied where the employee deviated from a prescribed sphere of recreational endeavor to embark upon a purely personal mission (*Matter of Balsam* v. *New York State Div. of Employment,* 24 A D 2d 802). *In Matter of Pecoraro* v. *Russell-Miller Milling Co.* (9 A D 2d 992), where decedent had been assaulted because he was a stakeholder of a bet made during working hours between coemployees, a claim for death benefits was disallowed. In *Pryor* (*supra*) the claim was dismissed where a lady employee was assaulted by a former coemployee who was discharged after he had made sexual advances to her. In *Matter of Schlener* v. *American News Co.* (240 N. Y. 622) recovery was denied to a claimant who was stabbed by a fellow worker to whom he had refused a loan. In *Matter of Scholtzhauer* v. *C. & L. Lunch Co.* (*supra*) there was dismissal where a waitress in a restaurant, who had declined the dishwasher's invitation to go out that evening, was shot as she passed dishes into the kitchen. The death did not arise out of the employment (cf. *Matter of Tecce* v. *McKesson & Robbins,* 23 A D 2d 594, affd. 20 N Y 2d 779). The dispute between Irma and Frankie and Charlie had nothing to do with the work and, while this was of no direct concern to decedent, his quarrel with his assailants did not arise out of the performance of any employment labor. Decedent had no work relationship with any of the parties, other than being a coemployee. The board's finding that decedent "was required to instruct the girls as to the work to be produced" is not supported by the record, there being no proof even that decedent's showing to some of the girls as to how to do their job was known by or acquiesced in by the employer. Seymour's following of Charlie and Frankie to a point outside the factory, where hostilities resumed, indicates a departure from or abandonment of employment (cf. *Matter of Goldfine* v. *Barsol [Parson] Cab Operating Co.,* 19 A D 2d 672; *Matter of Adelstein* v. *Bellride Transp. Corp.,* 15 A D 2d 690; *Matter of Stillwagon* v. *Callan Bros.,* 183 App. Div. 141, 145; 1 Larson, Workmen's Compensation Law, § 11:15 [a]). While time alone does not determine whether there was a cooling off period (cf. *Matter of Schneck* v. *Piel's Brewery,* 11 A D 2d 826; *Matter of West* v. *Piel's Brewery,* 20 A D 2d 943; 1 Larson, Workmen's Compensation Law, § 11.13), the assailants did not work for 24 hours prior to the acts causing death, during which period no circumstances of employment intervened. Even the liberal "but for" test is not "but for the bare existence of the employment", but rather "but for the conditions and obligations of the employment", and, adapting the language of *Matter of Pecoraro* v. *Russell-Miller Milling Co.* (*supra*) to the instant claim, the fatal attack upon decedent had no relationship to the nature of the work itself nor was it brought about by friction and strain engendered by the conditions and obligations of the employment. Nor was this a situation of an employee rescuing another employee from danger (cf. *Matter of Waters* v. *Taylor Co.,* 218 N. Y. 248), since, when decedent arrived on the scene, Irma was no longer, if ever, in danger as the proposed peril had dissipated. By following Charlie and Frankie to where they were working, at the conclusion of the "break" and after Irma had gone to her table, and then struggling with the men, and thereafter following them outside for a second round, decedent removed himself from the ambit of the emergency-rescue doctrine. *Noce* v. *Kaufman* (2 N Y 2d 347, 353), is not apposite since the assailants were not in control of the employer and each party had an equal opportunity to call them as witnesses (*Longacre* v. *Yonkers R. R. Co.,* 236 N. Y. 119, 125–126; *Hayden* v. *New York Rys. Co.,* 233 N. Y. 34; *People* v. *Elbroch,* 250 App. Div. 583, 589). In *Matter of Valenti* v. *Valenti* (28 A D 2d 572) contrary to the situation here, there was no proof to rebut the presumption

that the death arose out of the employment. In truth, the presumption has no place in any case once the facts are fully developed (*Matter of Wilson* v. *General Motors Corp.*, 298 N. Y. 468, 472; see *Matter of McCormack* v. *National City Bank of New York*, 303 N. Y. 5, 10–11; *Matter of Dillon* v. *LeRoy Mach. Co.*, 7 A D 2d 767; *Matter of Loverich* v. *Colorado Fuel & Iron Corp.-Wickwire Spencer Steel Div.*, 4 A D 2d 725). Decision reversed and claim dismissed, without costs. Reynolds, Cooke and Sweeney, JJ., concur in a memorandum by Cooke, J.; Herlihy, P. J., and Greenblott, J., dissent and vote to affirm in a memorandum by Herlihy, P. J. Herlihy, P. J. (dissenting): I would affirm. The board's finding was factual and not contrary to well-established law. The various decisions cited by the majority are affirmances of factual findings by the board. There are several reasons why an affirmance is required, *inter alia*: 1. The assault took place on the employer's premises. In *Matter of Valenti* v. *Valenti* (28 A D 2d 572, 573) this court stated: "At the time of the shooting, the decedent was on duty in his place of employment and was, therefore, in the course of his employment. Although there is no indication of the reason for the shooting, the claimant is entitled to the benefit of the presumption that, when an employee is accidentally killed in the course of his employment, in the absence of substantial evidence to the contrary, the death arose out of the employment." Contrary to the factual situation in *Valenti,* here there was direct proof of the happening and the cause thereof, but the board did not have to infer no connection with employment as a matter of law. 2. The board had the right to find that the decedent went to the aid of a coemployee. 3. The board had the right to find that the incident resulting in the assault was a hazard created by employment. 4. The fact that there was a 24-hour interval between the assault and the fatal shooting does not, as a matter of law, require reversal. (See *Matter of Ward* v. *Typhoon Air Conditioning Co.*, 27 A D 2d 785, mot. for lv. to app. den. 19 N Y 2d 582.)