## "THE COUNT JOANNES" *vs.* JOSEPH L. BENNETT.

A letter to a woman, containing libellous matter concerning her suitor, cannot be justified on the ground that the writer was her friend and former pastor, and that the letter was written at the request of her parents, who assented to all its contents.

One who has voluntarily and deliberately destroyed a written document, cannot be permitted to testify to its contents in a suit brought by himself and founded upon it, without first introducing evidence to rebut the suspicion of fraud arising from his act.

TORT brought on the 12th of June, 1860, in the name of " The Count Joannes, (born ' George Jones,') " for two libels upon him contained in letters to a woman to whom he was then a suitor, and was afterwards married, endeavoring to dissuade her from entering into the marriage.

At the trial in this court, before *Merrick*, J., it appeared that the defendant had for several years held the relation of pastor to the parents of the woman, as members of his church, and to the daughter, as a member of his choir; and there was evidence tending to show that he was on the most intimate terms of friendship with the parents, and that, on the 18th of May 1860, being on a visit from his present residence in Lockport, New York, he called upon the father at his place of business in Boston, and was urged by him to accompany him to his residence in South Boston, the father stating that both he and his wife were in great distress of mind and anxiety about their daughter, and that they feared she would engage herself in marriage to the plaintiff.  On their way to South Boston, the father stated to the defendant what he and his wife had heard

and apprehended about the plaintiff, and their views with regard to his being an unsuitable match for their daughter, who, with a young child by a former husband, was living with them. On reaching the house, it was found that the daughter had gone out; and it was then arranged that the defendant should write a letter, and materials for that purpose were furnished, and the letter set forth in the first count was written, addressed to the daughter, and left open and unsealed with the mother, after the principal portion of it had been read aloud at the tea-table in the presence of the parents and a confidential friend of the family. On leaving, the defendant was further requested to do what he thought best to induce the daughter to break up the match.

To sustain the second count, the plaintiff testified that he received the letter therein set forth from his intended wife, and on the 1st of June 1860, the day before his marriage to her, he burned it and did not take a copy; and he was then allowed under objection to repeat the contents from memory.

The judge ruled that neither of the letters was a privileged communication; and a verdict was returned for the plaintiff. The defendant alleged exceptions.

*G. W. Warren,* for the defendant.

The plaintiff, *pro se.*

BIGELOW, C. J. The doctrine, that the cause or occasion of a publication of defamatory matter may afford a sufficient justification in an action for damages, has been stated in the form of a legal rule or canon, which has been sanctioned by high judicial authority. The statement is this: A communication made *bonâ fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty to perform, is privileged, if made to a person having a corresponding interest or duty, although it contains defamatory matter, which without such privilege would be libellous and actionable. It would be difficult to state the result of judicia' decisions on this subject, and of the principles on which the\ rest, in a more concise, accurate and intelligible form. *Harrisor* v. *Bush,* 5 El. & Bl. 344, 348. *Gassett* v. *Gilbert,* 6 Gray, 94,

and cases cited. It seems to us very clear that the defendant in the present case fails to show any facts or circumstances in his own relation to the parties, or in the motives or inducements by which he was led to write the letter set out in the first count of the declaration, which bring the publication within the first branch of this rule. He certainly had no interest of his own to serve or protect in making a communication concerning the character, occupation and conduct of the plaintiff, containing defamatory or libellous matter. It does not appear that the proposed marriage which the letter written by the defendant was intended to discountenance and prevent, could in any way interfere with or disturb his personal or social relations. It did not even involve any sacrifice of his feelings or injury to his affections. The person to whom the letter was addressed was not connected with him by the ties of consanguinity or kindred. It is not shown that he had any peculiar interest in her welfare. Under such circumstances, without indicating the state of facts which might afford a justification for the use of defamatory words, it is plain that the defendant held no such relation towards the parties as to give him any interest in the subject matter to which his communication concerning the plaintiff related. *Todd* v. *Hawkins*, 2 M. & Rob. 20; S. C. 8 C. & P. 88. No doubt, he acted from laudable motives in writing it. But these do not of themselves afford a legal justification for holding up the character of a person to contempt and ridicule. Good intentions do not furnish a valid excuse for violating another's rights, or give impunity to those who cast unjust imputations on private character.

It is equally clear that the defendant did not write and publish the alleged libellous communications in the exercise of any legal or moral duty. He stood in no such relation towards the parties as to confer on him a right or impose on him an obligation to write a letter containing calumnious statements concerning the plaintiff's character. Whatever may be the rule which would have been applicable under similar circumstances while he retained his relation of religious teacher and pastor towards the person to whom this letter in question was addressed, and

towards her parents, he certainly had no duty resting upon him after that relation had terminated. He then stood in no other attitude towards the parties than as a friend. His duty to render them a service was no greater or more obligatory than was his duty to refrain from uttering and publishing slanderous or libellous statements concerning another. It is obvious that if such communications could be protected merely on the ground that the party making them held friendly relations with those to whom they were written or spoken, a wide door would be left open by which indiscriminate aspersion of private character could escape with impunity. Indeed, it would rarely be difficult for a party to shelter himself from the consequences of uttering or publishing a slander or libel under a privilege which could be readily made to embrace almost every species of communication. The law does not tolerate any such license of speech or pen. The duty of avoiding the use of defamatory words cannot be set aside except when it is essential to the protection of some substantial private interest, or to the discharge of some other paramount and urgent duty. It seems to us, therefore, that on the question of justification set up by the defendant under a supposed privilege which authorized him to write the letter set out in the first count, the instructions of the court were correct.

But on another point raised at the trial, we are all of opinion that the ruling of the court was erroneous. In support of his second count, the plaintiff was permitted to testify concerning the contents of the alleged libel, after it had appeared that he had voluntarily destroyed the letter in which it was contained. This we think was a violation of the cardinal principle that, where it appears that a party has destroyed an instrument or document, the presumption arises that if it had been produced it would have been against his interest or in some essential particulars unfavorable to his claims under it. *Contra spoliatorem omnia presumuntur.* In the absence of any proof that the destruction was the result of accident or mistake, or of other circumstances rebutting any fraudulent purpose or design, especially where as in the case at bar it appears that the paper

was voluntarily and designedly burned by the party who relies on it in support of his action, the inference is that the purpose of the party in destroying it was fraudulent, and he is excluded from offering secondary evidence to prove the contents of the document which he has by his own act put out of existence. If such were not the rule, and a party could be permitted to testify to the language or purport of written papers which he had wilfully destroyed, in support of his right of action against another, great opportunities would be afforded for the commission of the grossest frauds. A person who has wilfully destroyed the higher and better evidence ought not to be permitted to enjoy the benefit of the rule admitting secondary evidence. He must first rebut the inference of fraud which arises from the act of a voluntarily destruction of a written paper, before he can ask to be relieved from the consequences of his act by introducing parol evidence to prove his case. Thus it has been held that, when a note was burned by the holder a short time before it fell due, he was bound to show in an action upon the note that the act of destruction was honest and justifiable, or he could not recover; and even an alleged negligent destruction or loss of an instrument, unaccompanied by evidence or explanation to rebut the suspicion or inference of a fraudulent design, will not authorize secondary evidence of the contents of the instrument. *Blade* v. *Noland,* 12 Wend. 173. See, also, *Broadway* v. *Stiles,* 3 Halst. 58; *Riggs* v. *Tayloe,* 9 Wheat. 483, 487; *Renner* v. *Bank of Columbia,* Ib. 581. This doctrine is especially applicable to actions for libel, in which the language used, and the sense and meaning which properly attach to it, constitute the gist of the action.

In the case at bar, the plaintiff offered no evidence to show the circumstances under which he destroyed the letter referred to in his second count. He was not therefore entitled to offer any proof to show the contents. On this ground the verdict is set aside, and a                              *New trial granted.*