Cohn, J.
Appeal by defendants from judgments of the Court of Special Sessions, New County, crime of reselling tickets at excessive prices in violation of section 169-c of the General Business Law and conspiracy (Penal Law, § 580).
The information contains fifteen counts, fourteen of which charge one or another of defendants with violation of section 169-c of the General Business Law and the fifteenth count charges all with conspiracy to violate the provisions of the General Business Law respecting the sale of tickets of admis- • sion to theatres and places of amusement.
Defendant Betts was a oo-owner of the Jacobs Ticket Agency located in New York County. The other defendants, Hirsch, Cohen and Henry were employees. The People’s case is grounded largely upon the testimony of police officers who, pursuant to court order, intercepted telephone conversations over the wires of the ticket agency from June 1, to June 5, 1946. The police claim to have overheard and recorded conversations in which, it is alleged, each of the defendants sold and offered for sale, tickets to a prize fight and to Broadway plays at prices in excess of those permitted by statute. On June 5, 1946, the police arrested the four defendants in the store occupied by the ticket agency and at the same time seized theatre tickets with slips attached bearing notations of names of persons and theatres, together with dates and prices charged by defendants.
Defendants contend that proof of the telephone conversations was improperly received in evidence and that without such testimony there is no basis for a conviction.
On June 1, 1946, police officers William J. Dwyer and Lawrence M. Parry “ tapped ” the telephone wires of the Jacobs Ticket Agency. They listened to conversations on June 1st, 3d, 4th and 5th. Parry took no notes and he had no independent recollection of any of the conversations but two, neither of which was of particular significance. Dwyer made extensive notes of what- he says he heard, in his own shorthand. He recorded twenty-four telephone conversations between defendants and outside customers. From talks had with the four defendants after their arrest and from a telephone call he himself had made to one of them, Dwyer could, according to his testimony, identify the voice of each defendant as he had heard it over the telephone. Dwyer testified that he had no independent recollection of nineteen of these telephone conversations. Of the remaining five, he stated that he could recall only *740 one which related to the sale of tickets in violation of law. That was an alleged talk between defendant Betts and a person identified as “ Irving C.”
Dwyer described his method of recording as follows: As he was listening in, he would “ scribble down shorthand ” as much as he could upon a pad of paper. He would record only those conversations which had to do with sales at prices in excess of those permitted by law. At the end of each day he would transcribe his shorthand notes into longhand and after each such transcription the original shorthand notes were destroyed. On June 6th, the day following the arrest of defendants, from the longhand transcriptions, he dictated a statement of the conversations he had overheard to the complaint clerk in the Magistrate’s Court, who incorporated the statement into the complaint. Dwyer then destroyed his longhand transcriptions.
Thereafter, on October 21, 1946, as a witness at the trial, Dwyer stated that he had no independent recollection of the telephone conversations but could testify as to their content only from the typed complaint composed in the manner already described. He frankly admitted that he had destroyed his original shorthand notes and the secondary longhand transcriptions to forestall cross-examination as to their accuracy; that in other cases he had been compelled to go through a cross-examination and that he saw no purpose in being required to do that in this case. He stated that when he dictated the complaint on June 6th his recollection of the previous conversations accorded with what was typed out by the complaint clerk. The trial court thereupon permitted the witness to use the Magistrate’s Court complaint to refresh his recollection. Apparently what the witness actually did was to read into the record from the complaint, almost word for word, all the overheard conversations as set forth therein.
Defendants urge that because of Dwyer’s willful destruction of the original notes and the secondary notes, the trial court erred in permitting the witness to refresh his recollection from the Magistrate’s Court complaint. It is the contention of the People that the conduct of the officer in destroying the original notes should be considered only upon the question of what weight or probative force is to be accorded his testimony as to the conversations and does not go to the admissibility or competency of such evidence; that a ruling admitting such testimony upon the trial is “ virtually conclusive ”.
Inspection of the Magistrate’s Court complaint shows that a recital of the conversations allegedly overheard covers four *741 single-spaced typewritten pages. It is incredible that a witness could recall the details of such multiple conversations which had taken place on different days some five months before the trial. Obviously he could have no independent recollection of these conversations without a written record made at the time to refresh his recollection. The police officer has frankly stated that he destroyed the original written record and his subsequent longhand transcriptions to prevent cross-examination as to their correctness. When he did away with these notes he may well have believed that he was doing no wrong, yet by his conduct he has deprived defendants of their fundamental right to cross-examine as to the correctness and veracity of his original notes recorded under circumstances which might create grave question as to their accuracy.
In the circumstances of this case we think that the trial court erred in permitting the witness Dwyer to refresh his recollection from the Magistrate’s Court complaint as to the conversations overheard and as to the identity of the persons who partook therein and the court should not have permitted him to read such transcript into the record. While the general rule is that any paper whatsoever may be used to refresh the recollection of a witness provided it actually serves that purpose (Huff v. Bennett, 6 N. Y. 337; 2 Ford on Evidence, § 212; 3 Wigmore on Evidence [3d ed.], § 758), where as here, an officer of the law attempts to refresh his recollection from a writing which purports to be a transcript of original and secondary notes willfully destroyed by him to frustrate cross-examination, the witness should not be permitted to use such a document to aid him.
The situation presented is somewhat analogous to a case where one tries to prove the contents of a lost or destroyed writing by giving secondary evidence as to its contents. Unless sufficient reason is shown for not producing the writing, the best evidence rule requires that the writing itself be produced to prove its contents. (Mahaney v. Carr, 175 N. Y. 454, 461; Butler v. Mail & Express Pub. Co., 171 N. Y. 208, 211.) If the destruction of an original writing is with a fraudulent design, then parol evidence is inadmissible. A party may not have the benefit of inferior evidence where the higher testimony has been willfully destroyed. (Blade v. Noland, 12 Wend. 173.) It has been repeatedly held that the spoliation of an original document will prevent the spoliator from proving the contents of the destroyed document by secondary evidence. (Riggs v. Tayloe, 9 Wheat. [U. S.] 483, 485; Matter of Eno, 196 App. Div, 131, *742 163; West v. N. Y. Central & H. R. R. R. Co., 55 App. Div. 464; Jewett v. United States, 15 F. 2d 955, 956; “ Joannes ” v. Bennett, 87 Mass. 169, 172; Administrators of Price v. Administrators of Tallman, 1 N. J. L. 447.) The rule has been well stated in Ford (Vol. 4, § 363): “ If a writing is destroyed by a party to produce a wrong or injury to the opposite party, or to create an excuse for its non-production, he cannot give secondary evidence of its contents.”
Applying to the facts here the reasoning employed in the cases cited involving the best evidence rule, unless it is clear that the police officer depends upon his independent recollection of the conversations and not upon rehashed transcripts based upon original notes which he has deliberately destroyed, testimony founded upon the missing transcripts should be barred. Though the People have urged that the conduct of the officer in doing away with his original notes should be a factor which bears not upon the competency but only upon the weight to be accorded to his testimony of the conversations as he overheard them, we hold that in the circumstances here disclosed it would do violence to all principles of justice to allow in evidence proof of any conversations, supplied by having the witness refresh his recollection from the Magistrate’s Court complaint. The trial court in the circumstances of this case committed prejudicial error in overruling defendants’ objection to the admission of the witness’ testimony of the conversations as refreshed by the objectionable document.
It is suggested that as the triers of the facts have determined that the destruction of the original shorthand notes and the subsequent longhand transcripts thereof was not effected in bad faith or for a fraudulent purpose, such a ruling should not be disturbed by the appellate court. However, we find that there is no evidence to support the trial court’s ruling. When the officer testified that he destroyed his original notes to avoid cross-examination, any preliminary question as to his good or bad faith was eliminated. His purpose was obviously improper and in bad faith. To say that a police officer in good faith and innocently “ made an error of judgment ” when he destroyed documents because he “ didn’t wish to be cross-examined about them ” is a patent contradiction of terms. This was not a simple error of judgment but confessedly a deliberate and considered act.
The order slips and tickets seized at the office of the ticket agency on June 5, 1946, the date of defendants’ arrest, we are now told, “ corroborates ” the recorded wire taps as testified *743 to upon the trial as to dates, amounts, charges, tickets and performances. We are also advised that the alleged admission made by the defendant Betts at the time of his arrest to the police officer that “ You have the telephone conversations. You' don’t have to take the tickets,” also “ corroborates ” the accuracy of these transcripts.
There is no evidence in the record to the effect that officer Dwyer told Betts of the tapped telephone conversations. Certainly there is no proof that on June 5th he advised Betts of the substance of the telephone conversations as he dictated them the next day. What the officer found at the ticket agency on June 5th or what he was told by defendant Betts or the other defendants on that day cannot by any stretch of reasoning be regarded as “ corroborating ” the accuracy or correctness of the rehashed transcript dictated the next day to the complaint clerk in the Magistrate’s Court.
Enforcement of the law and the administration of justice are not promoted through thwarting of the right of cross-examination in a criminal prosecution. While it may be true that the defendants if guilty are worthy of punshment, they are under our system of law entitled to have their guilt properly established upon a fair trial free from substantial error. (People v. Marendi, 213 N. Y. 600, 619; People v. Wilcox, 245 N. Y. 404; People v. Elbroch, 250 App. Div. 583, 590.)
It may well be that upon another trial, from legal evidence available as well as from such portions of the conversations as to which police officers may have an independent recollection, which may be refreshed in any proper manner, the People will adduce sufficient proof to warrant a conviction of the crime charged against one or all of the defendants, but upon the record before us the judgments of convicion may not be permitted to stand.
The judgment of conviction as to each defendant should be reversed and a new trial ordered.