Dore, J.
(dissenting). Defendants’ conviction of the crimes of reselling theatre tickets at excessive prices (General Business Law, § 169-c) and conspiracy so to do (Penal Law, § 580) are being reversed on the ground that the police officer’s testimony of the telephone conversations is incompetent because he admitted destroying original and secondary memoranda of the talks to avoid cross-examination. The People urge that the admitted destruction of the original memoranda does not make the testimony incompetent or entirely inadmissible, but bears on *744 the weight, if any, that should be accredited to it. In the light of the facts disclosed in this record, I think the People’s contention should be sustained and the convictions affirmed.
If original notes or memoranda of recorded conversations are not available, a witness may testify from a copy so long as there is testimony, as there was here, that the facts were truly recorded and the copy a true one. In People v. Engelbrect (260 App. Div. 912), in a prosecution for leaving the scene of an accident, a witness copied the license number of an automobile on a match box; thereafter she gave’ the match box to a patrolman who copied the number on a temporary memorandum pad and threw the match box away; later the patrolman recopied the number into his permanent memorandum book and discarded the temporary pad. On testimony that the number had been copied correctly, the final entry was accepted; this court sustained the judgment of conviction over the specific contention that such evidence was incompetent. In Goodfriend v. United States 294 F. 148, 152-153, [1923]) the court upheld the use of memoranda recopied from contemporaneous notes which had been destroyed. The witnesses made notes of conversations which they afterwards extended in greater detail while the facts were fresh in their memories and the court said: “ It is not a valid objection to the use of a memorandum that it has been copied from another.”
This rule may be applied even where 'the original has been deliberately destroyed if it appears that the destruction was free from bad faith or fraudulent design; the evidence is not in every case incompetent, but its weight is greatly affected and there is strong inference that what was destroyed is unfavorable to the spoliator. ■ (Contra spoliatorem omnia presumuntur.) But the presumption is not conclusive and the use of secondary evidence should not be precluded if the triers of the fact after proper examination determine that the destruction was not in bad faith or fraud and in fact did not prevent the court from ascertaining the true facts. Whether the destruction was innocent or corrupt is a preliminary question of fact for the trial court. If such inquiry shows bad faith or fraud the secondary evidence may be excluded (Blade v. Noland, 12 Wend. 173; “ Joannes ” v. Bennett, 87 Mass. 169, 173). But if the circumstances dispel suspicions of corrupt intent the secondary evidence is competent and should be received.
The question was considered by the Court of Appeals in Mason v. Libbey (64 How. Prac. 259, 267-268). The trial court had excluded a destroyed letter; the Court of Appeals said: *745 “ * * # it was for the court to determine in the first instance whether the evidence established that the letter was destroyed, and also that its destruction was not to produce a wrong or injury to the opposite party, or to create any excuse for its non-production * * *. This is so whether the paper was destroyed by a party * * * or a witness *' * *, and the sufficiency of the explanation presented a question of fact for the trial judge which this court cannot review. ’ ’
A similar question was considered by the same court in Steele v. Lord (70 N. Y. 280, 283), where vouchers had been deliberately destroyed, and the spoliator said it was his custom so to do after settlement with the bank. Evidence of the contents of the vouchers was allowed by the trier of the facts. Bapallo, J. for the court held: “ The truth and good faith of this explanation were questions of fact for the referee, which it is not. the purpose of this court to review.” In Dearing v. Pearson (8 Misc. 269, 272 [N. Y. Com. Pleas — Gen. Term 1894]), the applicable principle is stated as follows: “ Whether or not the destruction of the instrument was prompted by motives innocent of corrupt intent or design is a preliminary question of fact which must be determined by the trial justice before parol evidence of the contents of the instrument is receivable * * *, and with his determination upon conflicting evidence, or upon conflicting inferences from the evidence, the appellate court will not interfere. It is the province of the appellate court to reverse the trial justice’s determination only when there is no evidence whatever or no sufficient evidence to support the latter’s determination of the facts.”
Wigmore, considering the rules applicable to memoranda used in attempting to revive past and present recollections, says: “ The trial court’s discretion should be allowed to control. There should be liberal interpretation and liberal exemption. And no ruling of admission should ever be deemed an error worth noticing on appeal. ” (Vol. 3, § 755.) (See, also, Hearsay and Preserved Memory, Edmund M. Morgan, 40 Harv. L. Rev. 712, 721.)
In the case before us there was the widest preliminary cross-examination by defendants’ counsel and by the court itself into the reasons that had prompted Officer Dwyer to destroy the original notes. He testified that he destroyed them because he did not want to be cross-examined “ in that particular way ”, and said he could not recollect “ all ” the testimony without using the complaint. Defendants’ counsel admitted that if the destruction “ were done in good faith, I [defendant’s counsel] *746 would not have a leg to stand on.” After completion of the preliminary, prolonged examination, the court unanimously concluded that the witness had not- acted in bad faith, but on the contrary expressly stated through the Presiding Justice that the officer had been “ very frank on the witness stand, very frank and honest ”. Thereafter the witness was permitted to use the complaint as a memorandum of past recorded facts, made immediately after completing the wire tapping ánd compared with the original transcribed notes from which the complaint was dictated, all of which agreed with his recollection at the time of what he had heard on the four previous days, June 1st, 3d, 4th and 5th. What he did, he testified, was his usual procedure.
If the witness Dwyer was not exceptionally frank and honest, he never would have volunteered the statement that he destroyed the original notes to avoid a particular type of cross-examination, but would have attempted to explain in some other way, e. g., through loss or accident, the absence of the original memoranda. His testimony was forthright, frank, honest, believable. It completely satisfied the trial court that the true facts had not been suppressed or kept from the court. The officer’s veracity, the sufficiency and truthfulness of his explanation were for the trial justices and on the facts here disclosed their conclusion should not be set aside (People v. Tendetnick, 237 App. Div. 9, 11-12 [1st Dept. 1932]; People v. Atlas, 183 App. Div. 595, 600 [1st Dept. 1918], affd. 230 N. Y. 629 [1921]). It seems clear to me, as it was entirely clear to the three trial justices who saw and observed the witness, that the officer made an error of judgment, did not intend any fraud or attempted fraud or act in bad faith.
The accuracy of the transcript and of the original notes transcribed was corroborated by the admission of defendant Betts, co-owner of the ticket agency, that the police had enough evidence from the wire tapping without seizing tickets and order slips. Thus, Officer Dwyer testified, no.t from memoranda but from his own recollection, that on the day of the arrest when he showed the tickets to Betts, Betts said: “ What do you want to do — hang me?” “You have the telephone conversations. You don’t have to take the tickets.” “You know, I don’t get the tickets for their face value either. ’ ’ Police Sergeant Rooney, present at the arrest, corroborated this when he testified that Betts said: “You got .enough now. What do you want to do — hang us? ” From such admissions, if believed, it follows as a necessary inference that Betts was told the wires had been tapped.
*747 The charge of selling tickets at excessive prices in violation of the General Business Law was established beyond a reasonable doubt. As the justice presiding at the trial said: “ So far as we are concerned, we know there was a violation of law; there is no question about that * * He also pointed out: “ The crime was serious, especially in view of the very large excess charge for the tickets.” Thus $100 tickets to the Louis-Conn prize fight were offered for $150 or $175 each depending on location; four $6.60 tickets to a leading Broadway production were sold for $40.00 and $6.60 seats for another production at $9.90.
In every instance Officer Dwyer testified that he had an independent recollection of the voices of the different defendants on the telephone. He had full and ample opportunity to study their voices. He had listened to numerous telephone conversations in a period extending over four days, June 1st, 3d, 4th and 5th. Many of them were not recorded because they were not relevant. Immediately after the wire tapping on June 5th, about 5:30 p.m. he went to the agency, found the four defendants and following the arrest conversed with each at considerable length and identified the voice of each. The triers of the fact properly found nothing incredible in such testimony.
The order slips and the tickets in defendants’ possession, seized on the day of arrest, also corroborated the recorded wire taps in a number of instances as to dates, amounts charged, tickets and performances. Defendants’ counsel conceded that the prices of tickets referred to in the telephone conversations were in every instance in excess of the legal rates.
Defendants did not take the stand or adduce any evidence whatever in their own behalf.
This is not a case of proving a missing document that has been deliberately destroyed, such as a letter or a deed, or a will that is the subject matter of the proof. Here the issue relates solely to a memorandum of a fact recorded. There is a distinction between proving a fact which has been put in writing and proving the writing itself. (McKelvey on Evidence [5th ed.], p. 609, § 345.) Even where a missing document is involved, it is only in the absence of proof rebutting fraudulent design that secondary evidence is entirely excluded (“Joannes” v. Bennett, 87 Mass 169, 172-173).
There is nothing in Jewett v. United States (15 F. 2d 955) to the contrary. There the original documents were available and°were not destroyed; the court concluded that in such instance *748 the witness- should have recourse to these in attempting to refresh-his recollection. In fact that case recognizes the rule contended for by the People, for the court pointed out:The government cites as authority for the course pursued Goodfriend ■fT.United ‘States (C.C.A.) 294 F. 148. But'the copies there used were made soon after the event and while the facts were still -fresh in memory. Clearly, if, as was there the case, brief memoranda, made at the very time of the occurrence, are amplified and copied soon after the occurrence, and while the facts are still fresh in. the memory of the witness, the use of such copy falls within the principle underlying the rule.” i
- All that Matter of Eno (196 App. Div. 131, 163) stands for is that where written evidence is deliberately destroyed the inference is created that the matter destroyed or mutilated is unfavorable to the spoliator. In brief, an unfavorable inference may arise in such a case; but this does not mean that secondary evidence of; the contents of the destroyed document may not be received if the court is convinced that the destruction was free from fraudulent design. I
The conspiracy count was also proved beyond a reasonable doubt. The record establishes numerous facts showing that all. defendants were confederates in the commission of the offense. The grossly excessive prices charged were practically uniform in all the transactions. Persons unknown to defendants did not get tickets without regard to which defendant was on the ■phdne. After the arrest, Cohen, Ilirsch and Henry admitted, as Officer Dwyer testified on his independent recollection, .that “ they carried out their orders which [were] given to them, by Mr. Betts and they made themselves a few extra dollars a week by overcharging on tickets.” ' ■ .
■. The defendants had apparently learned of a police investigation and they passed the word to each other and even to another agency. Officer Dwyer. testified (in this instance on his own recollection) of a telephone conversation between the Gold Ticket Agency on the outside and Leon Cohen of the Jacobs Agency on the inside. He testified that Cohen said: “ This is Lean over at Jacobs. -If you see a light-haired fellow with a .dark-haired girl looking for the Louis-Conn fight, be careful. They are the law. And there is a dark-haired fellow with a tan raincoat, by himself, who is following up after them. He is (also the law. Watch your step. They are out to grab us, if •they can.’ The voice on the other side said, ‘ Thanks for the dip-off ’■ ”, Again Betts from outside the agency called Cohen *749 at the agency and said: “ ‘This is Bunny. Has the law .been around there yet? I’ve been told that they are out at the different ticket offices trying to buy tickets for the Louis-Conn fight.’ The inside voice said, ‘ Yes, I have been tipped off fo them. I steered them off.’ ” The witness remembered that particular conversation and that the outside voice was Betts’, and the inside, Cohen’s.
All defendants in the agency were seen behind the desk each day working together by the officer who frequently walked past during the days he tapped the wires. Defendants’ conduct could not be the result of independent, unplanned, coincidental acts, but on the contrary the result of a definite plan. The state of facts is similar to that found in People v. Cooper (268 App. Div. 966, affd. 294 N. Y. 797) where a co-owner and an employee of a ticket agency were convicted of selling railroad tickets at excessive prices and for conspiracy. The conviction there was based on evidence obtained by wire tapping and the defendants urged that their concertive conduct did not import a conspiracy. This court and the Court of Appeals rejected that contention.
The order slips and tickets seized at defendants’ place of business in connection with the arrest were properly received in evidence. A number of them referred specifically to overheard telephone conversations. Betts, Hirsch and Henry admitted knowledge and control of the exhibits and attempted to exercise dominion over them. Each set of slips and tickets patently evidences sales at excessive prices.
At least on the facts in this case, the court should not lay down a rigid and inflexible rule that where a memorandum of past recollection is destroyed to avoid cross-examination all secondary evidence of the facts recorded should be excluded as completely incompetent and inadmissible even though the triers of the fact, who had the opportunity of seeing and observing the witness, found after extensive examination that the destruction was not in deliberate bad faith or actual fraudulent intent to prevent the court from ascertaining the truth.
The People admit that Betts’ total fine of $1,500 ($500 for each of the substantive counts) is in excess of the $250 specified by statute (General Business Law, § 169-i) and that his sentence should be modified accordingly. i
From reversal of the judgments of conviction, I dissent and vote to reduce Betts’ total fine from $1,500 to $750, and in all other respects to affirm.
*750 i Peck, P. J., Glennon and Callahan, JJ., concur with Cohn, J.; Dobe, J., dissents from reversal of the judgments of conviction and votes to reduce Betts’ total fine from $1,500 to $750 and in all other respects to affirm, with opinion.
Judgment of conviction as to each defendant reversed and a new trial ordered. Settle order on notice.